Thank you, Your Honor, and good afternoon. If it pleases the Court, Brian McComas on behalf of Mr. Long Andrews, and I'd like to reserve four minutes' time. Okay, watch your clock, please. I'm sorry, Your Honor? I said watch your clock. Thank you. I'm going to focus solely on issue number one today. And in doing so, we aren't presenting a defense of the culture, the subculture as it's described, pimping and pandering. We're not presenting a defense of the words used by my client, both in text messages and recorded jailhouse calls, in the sense of the morality of those words. And we are focused extensively on what we perceive as a lack of nexus between coercion and commercial sexual acts, which is where we think that the evidence that was admitted and then stricken filled in the gaps to form the finding of beyond reasonable doubt by the jury. And in saying that, I am conceding that there were acts of pimping in this case. And those acts meet a definition that is more akin to the state of California's in Penal Code 266 or in the United States Code 2421, in that they lacked the coercion necessary to get up to the 1591 finding. You mean the beating of the woman in her face lacked coercion? The nexus of that to a commercial sexual act did. And the reason that I think that it's important in this case to have considered how the evidence that was stricken is because that act, that domestic violence, is unfortunately all too common in California in these cases. But it's not necessarily connected to making her go out and walk the street or making her turn over any money. It's just plain domestic violence, right? Well, it's an unfortunate reality of their relationship. Is the answer yes? The answer is yes. That is an act of domestic violence. And I don't think anyone could argue differently. But I think that the question here is when we have these dual intents, which goes back to the defense of the case. So what was the independent evidence of coercion? The independent evidence as to victim one is these text messages, jail calls. She didn't testify, though. So there wasn't testimony from the victim saying, I felt compelled to do this because I would be beaten. I felt compelled to do this because I would have no money. There's actually some text messages where she says, I'm free to go about this, blaming him for not managing their money in a way where they could get food and other elements that would normally be forthcoming in a case like this where the victims actually testify. Part of our question here as to how this stricken evidence mattered is because it does go to what the defense tried to present, which is that there was a personal relationship. But more interestingly is that the defense presented the origin story here, and we don't have that in this case. So your whole argument is that the evidence should not have been admitted, correct?  In fact, the judge ultimately struck it, correct? Correct. And then he admonished the jury to disregard the evidence, the testimony and the documents that related to it. Oh, I guess it was a TB, is that the correct one? Yes, sir. And later on during the trial, there was a proposed curative instruction that was a little bit more forceful, and the district court said, no, I'm not going to give that. He gave his standard. He admonished them, and then at the end, he again said, you know, any evidence I told you that was stricken, you're disregarded, it's not to play any role. We presume that juries follow that instruction. Correct. Why shouldn't we do it? Why doesn't that apply here? Well, there is other evidence referring to TB that apparently didn't come within that instruction. There's both a jail recording saying her name, but also victim number three references a picture of her as a prostitute of my client. So not everything, and the recordings played in response to a question after the jury instructions. So not everything did come within that, those curative instructions. Well, what was wrong? Why should those, the two items you just mentioned, why should they have been stricken as well? Well, I would say for the same reasons that none of this should have came in in the first place, which is the lack of foundation, a direct witness, tying TB. Were all those objections made to the other evidence that you say did not come within the curative instruction? The objections weren't, but I believe that the proposed curative instruction would have covered all of that. The proposed curative instruction specifically referenced the evidence to be stricken and then said the reason, which is the more forceful reason we needed a curative. The instruction you admit was argumentative because it blamed the prosecution as having done something improper. I would have not proposed that first part of the sentence. The second part I would have, which it also said the evidence is to be stricken because it's not been proven to be related to Mr. Long. But it did have the argumentative position of the prosecution did something wrong. I believe improper, yes. And I don't think I defended that in my briefing. But it was the whole instruction that was proposed to the judge, wasn't it? There was a whole instruction proposed to the judge. He just said I'm not going to give this. He did not give that. And I recognize that it's an extraordinary case that gets a motion for new trial, and I recognize that frankly there isn't a case with active sexual trafficking where a new trial was granted that I can cite to this court. But to strike a balance between weighing the evidence and the credibility of witnesses, I'm urging the court to evaluate how that evidence would have impacted the defense. And I'm urging the court to consider how the pattern that is alleged is the critical component for the prosecution. And I'm going to rest as I see I'm over my six minutes. All right. Thank you, counsel. May it please the court. Christina McCall for the United States. In this trial, the government presented overwhelming evidence over eight days that Mr. Long Andrews engaged in sex trafficking of victim one. The experienced trial judge, Judge Mendez, he struck the limited other acts testimony shortly after it began to be introduced, and he, sua sponte, timely instructed the jury to disregard the testimony of the three witnesses as to this incident and the seven exhibits that were introduced. He did it on the basis of foundation, right? Nobody was going to testify that they knew that the defendant here was the person who was seen beating TB in the bathroom. Is that right? Your Honor, that is a fair interpretation of Judge Mendez's ruling at the time, when he said you had to have the McDonald's person do it. If she can't identify him in the courtroom, it's out. It's out. And so mid-trial, he did strike that. He did not allow it. Did the government know TB wasn't going to testify? I mean, how does this happen? Did the government know? Did they think or express to the court at any time that TB was going to come in and testify? No, Your Honor. She was not on the witness list. So did you offer anything else that would tie this testimony to Andrews as the attacker? Yes, Your Honor. We did not get to the point in the trial where we would have introduced a self-authenticating state court record that showed that Mr. Long Andrews was the person who was convicted of this incident at the McDonald's and that the victim was the protected person in that case. Well, if he wanted the evidence to stay in, why didn't you show it to the judge at the time? Your Honor, we did have a proceeding outside the presence of the jury, and we did offer to introduce that and to call the witness to testify. Officers shown that he was the one who had arrested Mr. Long Andrews 10 days later for that incident. But the judge, in order to protect the record, avoid a mistrial, made the decision not to allow the government to go that far. If the McDonald's witness did not identify her, he was striking the evidence. We submit that he gave the correct model night circuit instruction for striking testimony and exhibits and that those were never mentioned again. We didn't mention the TB evidence in our opening statement. We did not mention it in our closing argument or in rebuttal, and we didn't call any other witnesses to talk about TB once that ruling was made. And it is true that the Supreme Court and this court presumes that juries follow their instructions. There is no evidence here that the jury disregarded. I always find that to be somewhat of a fiction, though. You know, it's hard to unring the bell. True, Your Honor, but in light of the overwhelming evidence introduced as to the substantive count, the sole count where victim one, MD, was the victim, the government did produce, and I would submit, unlike counsel for Mr. Long-Andrews, there was an overwhelming amount of evidence of not just violence but threats of violence, threats of force, as well as coercion. And those came in the form of phone calls from jail. And we did list those in our brief and submitted them as the SCR. They came in the form of text messages instructing her what to do, making her reply constantly with a count, ordering her around, telling her when she could take a shower, telling her who she could be with, who she could talk with, who she could smoke with. He had her under his coercive thumb, and the evidence of trial showed overwhelmingly why, was to cause her to continue to engage in the commercial sex activities. Neither MD, who was victim one, nor TB, victim two, testified as to any blows by Long-Andrews as to them, correct? That's correct, Your Honor. But didn't a hotel employee testify that Long-Andrews had beaten MD? Yes, Your Honor. So we had the eyewitness testimony of Mr. Bhakta, the hotel clerk, who did see that, part of which, a little bit of it was captured on the hotel security cameras for the parking lot. But more importantly, we had BT. She testified that she was out with her pimp and Mr. Long-Andrews and MD many times during the charged time frame, that he was strict with her, that she saw him hitting her between 10 or 20 times. He saw, pardon me, give me the names, who saw hitting who? Yes, Your Honor, BT, who was a victim in a different case, saw Mr. Long-Andrews, the defendant here, hitting victim one, MD. And that he was violent. She testified he was violent. And were there any circumstances which show that that was merely a domestic dispute? Your Honor, we would submit there are not. That it is common for local law enforcement to mistake sex trafficking incidents of violence and threats of violence and coercion for domestic violence. He did, eventually, Mr. Long-Andrews pled no contest in Orange County Superior Court to a domestic violence crime arising out of his beating of victim one, MD, in the parking lot. Was that part of the evidence in this case? Your Honor, it was part of the motions in limine, but not the evidence before the jury. So, Mr. Counsel for the appellant stated that the coercion and sex acts nexus was lacking here. That it just simply wasn't connected. We would submit that the evidence in the trial did show, both in the times of his orders to victim one, MD, the phone calls from jail, the instructions to someone he called his uncle, who appears to have been taking care of MD while he was temporarily incarcerated, that all of these things actually did show the nexus and the pattern and the knowledge that Mr. Long-Andrews would use. Force, threats of force, and coercion to cause victim one to continue to engage in the commercial sex acts. In this case, we spoke briefly about presuming that juries follow their instructions and whether or not it's a fiction. Here, there's no evidence that they did not. They sent out one note during deliberations, and they said, we'd like to hear the phone calls with MD, victim one, and with his uncle. And that was a pretty key call. There's no evidence that they considered facts outside the record. There's no evidence that they asked to hear more about victim two, TB. So this presumption in this case is not undercut by any of the facts in the trial. If Judge Mendez made a mistake in provisionally allowing this evidence of victim two to be introduced, we would submit that it was harmless error. In the context of this trial, which lasted approximately eight days, there were over 200 exhibits admitted. There were approximately 29 witnesses who testified at the trial. This is a blip in the scope of the larger trial. And given the overwhelming evidence and the Court's proper instructions both at the beginning of the trial, shortly after the questioned other acts evidence came in, and at the conclusion of the trial, we submit that any evidence in the introduction of this other acts evidence would be harmless. If the Court doesn't have any further questions for me, we would ask that you affirm both the conviction and sentence of Mr. Long Andrews. All right. Thank you, counsel. Mr. McComas? Just very briefly, there was 29 witnesses, and one reason is because this was a case built on wiretaps. There's plenty of witnesses talking about how they obtained the wiretaps and lots of logistics for foundation, but there's three missing, two missing witnesses that are critical, and those are the two victims that are alleged. And we do think blips matter. There's a 20-minute video of this girl crying. Why is that shown at all? Why is there three additional witnesses who talk about this in the middle of the day? If the jury's not told none of this connects to Mr. Long, then how do we get rid of the prejudice? Because an inquisitive juror could have easily connected dots to TV, to the telephone call played after the instructions, to BT, to the larger pattern that was offered by the government. And I would note that while TB wasn't on the witness list, defense counsel noted that she showed up to the court. She was outside in the hall. So someone besides Judge Mendez could have made the call that there wasn't going to be a witness presented for a foundation of any of this evidence. And ultimately, Your Honor, I'm not here to defend domestic violence. We're not here to defend pimping and pandering. What we're here is because we believe that Mr. Long has been convicted of the wrong crime. And that crime is a Penal Code 266 or 2421. And not all stories about pimping are like a Nora or a night in Siberia. Some of these are sad, tragic, but it doesn't make them all acts of coercion. So we would ask that you send us back for a new trial or on the limited sentencing issue. Thank you. Thank you very much, counsel. U.S. v. Long, Andrews will be submitted.
judges: WARDLAW, PAEZ, BEA